

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-11-2009

# Amer Bird v. Secretary Interior

Precedential or Non-Precedential: Precedential

Docket No. 07-4609

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

## Recommended Citation

"Amer Bird v. Secretary Interior" (2009). *2009 Decisions*. Paper 1628.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1628

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4609

AMERICAN BIRD CONSERVANCY; AMERICAN
LITTORAL SOCIETY; CITIZENS CAMPAIGN FOR THE
ENVIRONMENT; DEFENDERS OF WILDLIFE;
DELAWARE AUDUBON SOCIETY; DELAWARE
RIVERKEEPER NETWORK; NATIONAL AUDUBON
SOCIETY; NEW JERSEY AUDUBON SOCIETY; SIERRA
CLUB - DELAWARE CHAPTER; SIERRA CLUB OF NEW
JERSEY CHAPTER,
                                    Appellants

v.

DIRK KEMPTHORNE, SECRETARY, UNITED STATES
DEPARTMENT OF THE INTERIOR;
H. DALE HALL, DIRECTOR, UNITED STATES
FISH AND WILDLIFE SERVICE

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 06-cv-02641)
District Judge:  The Honorable Joel A. Pisano

Argued:  January 12, 2009

Before: SLOVITER, BARRY, Circuit Judges, and POLLAK,[*]

---

[*]  The Honorable Louis H. Pollak, Senior District Judge, United
States District Court for the Eastern District of Pennsylvania,
sitting by designation.

District Judge

(Opinion Filed: March 11, 2009)

———————

Julia A. LeMense, Esq. (Argued)
Eastern Environmental Law Center
744 Broad Street
Suite 1525
Newark, NJ 07102-0000

*Counsel for Appellants*


Charles R. Scott, Esq. (Argued)
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 23795
L'Enfant Plaza Station
Washington, DC 20026-0000

*Counsel for Appellees*

———————

OPINION OF THE COURT

———————


BARRY, Circuit Judge

In July and August 2005, appellants, a number of conservation groups,[1] petitioned the U.S. Fish and Wildlife Service ("FWS") to list as endangered on an emergency basis the red knot,

———————

[1] Appellants are the American Bird Conservancy, American Littoral Society, Defenders of Wildlife, Delaware Audubon Society, Delaware Riverkeeper Network, New Jersey Audubon Society, and the Delaware and New Jersey Chapters of the Sierra Club.

2

a species of migratory shorebird. The FWS declined to undertake emergency rulemaking by letter of December 22, 2005, but continued to review the petition in the context of a non-emergency. On June 13, 2006, before the FWS made a final determination, appellants filed a complaint in the U.S. District Court for the District of New Jersey claiming (1) that the denial of emergency rulemaking was arbitrary and capricious, in violation of the Endangered Species Act ("ESA"), and (2) that the FWS violated the ESA by failing to issue timely findings on the petition. The FWS issued its final determination—that the listing of the red knot was warranted but precluded by higher-priority listing activity—in its periodic Candidate Notice of Review ("CNOR") published on September 12, 2006. In response, appellants dismissed their timeliness claim, but persisted with their challenge to the denial of emergency rulemaking. In an opinion and order dated October 11, 2007, the District Court dismissed the complaint for lack of subject matter jurisdiction, finding that the FWS's denial of the emergency listing request was not reviewable under either the ESA or the Administrative Procedure Act ("APA"). Given this finding, the District Court did not find it necessary to reach the FWS's claim that the publication of the warranted but precluded listing determination in the CNOR rendered moot appellants' challenge to the denial of emergency rulemaking. This appeal followed.

## I.

### A.     The Red Knot

The red knot (*Calidris canutus rufa*) is a medium-sized shorebird that undertakes an annual 30,000-kilometer migration from its wintering grounds in Patagonia and Tierra del Fuego to its breeding grounds in the high Arctic. Red knots begin their northern migration in February, with peak numbers leaving Argentina and Chile between mid-March and mid-April. As part of their northward migration, red knots stop over in the Delaware Bay between late April and early June, coinciding with the spawning season of horseshoe crabs. There, the birds feed on horseshoe crab eggs in order to refuel for the final leg of their journey to the Arctic.

3

Surveys of the Delaware Bay region during recent spring migration seasons indicate a substantial decline in the red knot population. It is believed that the reduction in numbers is in large part attributable to the overharvesting of horseshoe crabs for commercial purposes. Because of the corresponding drop in the quantity of horseshoe crab eggs, red knots have failed to attain the critical weight necessary to fly to their breeding grounds and survive an initial few days of Arctic snow cover. Since 1999, regional and state conservation authorities have adopted a series of timing restrictions and substantially lower harvest quotas for horseshoe crab harvesting. Nevertheless, the number of red knots observed in the Delaware Bay has dwindled to approximately 14,000 in recent years, down from highs of approximately 95,000.

## B.      The Listing Petitions and Agency Response

The ESA provides a mechanism by which interested persons may petition the Secretary of the Interior for the listing of species as either endangered or threatened. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a). In the normal course, upon receipt of a petition, the FWS has 90 days to make a finding as to whether the petition presents substantial information indicating that the petitioned action may be warranted. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b). If the FWS concludes that the action may be warranted, then within 12 months after receiving the petition, it must make one of the following findings: (1) that the action is not warranted; (2) that the action is warranted; or (3) that the action is "warranted but precluded" by other higher priority listing actions. 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.14(b)(3).

In addition to the normal listing mechanism, the FWS is also authorized to list a species immediately in case of an "emergency posing a significant risk to the well-being of [that] species." 16 U.S.C. § 1533(b)(7).[2] It is the position of the FWS, a position with

---

[2] The full text of the emergency provision is as follows:

> Neither paragraph (4), (5), or (6) of this subsection nor section 553 of Title 5 shall apply to any regulation issued by the Secretary in regard to any

which the District Court agreed, that this emergency provision is committed solely to the discretion of the FWS and is not reviewable under the so-called discretion exemption to the APA, 5 U.S.C. § 701(a)(2).

In July and August 2005, appellants petitioned the FWS to

emergency posing a significant risk to the well-being of any species of fish or wildlife or plants, but only if—

> (A) at the time of publication of the regulation in the Federal Register the Secretary publishes therein detailed reasons why such regulation is necessary; and

> (B) in the case such regulation applies to resident species of fish or wildlife, or plants, the Secretary gives actual notice of such regulation to the State agency in each State in which such species is believed to occur.

Such regulation shall, at the discretion of the Secretary, take effect immediately upon the publication of the regulation in the Federal Register. Any regulation promulgated under the authority of this paragraph shall cease to have force and effect at the close of the 240-day period following the date of publication unless, during such 240-day period, the rulemaking procedures which would apply to such regulation without regard to this paragraph are complied with. If at any time after issuing an emergency regulation the Secretary determines, on the basis of the best appropriate data available to him, that substantial evidence does not exist to warrant such regulation, he shall withdraw it.

16 U.S.C. § 1533(b)(7).

list the red knot as endangered on an emergency basis. In December, the FWS replied in a two-page letter, which stated, in part:

> While we have not made a decision on whether the petition presents substantial information that the petitioned action may be warranted, we have looked at the immediacy of possible threats to the species to determine if emergency listing may be warranted at this time. Our initial review of your petition, and the information within our files, does not indicate that an emergency situation exists.

(App. 153.) The letter also explained that several regional and state protection measures were already in place and that observed conditions during the 2005 stopover indicated a slight increase in the number of red knots. The FWS did not rule out the possibility of future listing activity, indicating that it would "review the petition in the context of a non-emergency, through [its] petition process." (App. 154.) It anticipated making its already-belated 90-day finding in early 2006.

Before hearing again from the FWS regarding the red knot, appellants filed this action in the District Court, claiming, as noted above, that (1) the decision not to list the red knot on an emergency basis was arbitrary and capricious,[3] and (2) the FWS failed to meet

---

[3] According to the ESA, listing determinations must be based on "the best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A). A species is adjudged to be endangered or threatened if it meets one or more of five statutorily defined factors:

> (A) the present or threatened destruction, modification, or curtailment of [the species'] habitat or range;
> (B) overutilization for commercial, recreational, scientific, or educational purposes;
> (C) disease or predation;
> (D) the inadequacy of existing regulatory

6

its response deadlines set forth in 16 U.S.C. § 1533(b)(3)(A) and (B).

Three months later, the FWS formally responded to the petition when, on September 12, 2006, it published its CNOR in the Federal Register. *See* Endangered and Threatened Wildlife and Plants; Review of Native Species That Are Candidates or Proposed for Listing as Endangered or Threatened; Annual Notice of Findings on Resubmitted Petitions; Annual Description of Progress on Listing Actions, 71 Fed. Reg. 53,756 (Sept. 12, 2006) (to be codified at 50 C.F.R. pt. 17). The CNOR concluded that

> the threats, in particular the modification of habitat through harvesting of horseshoe crabs to such an extent that it puts the viability of the knot at substantial risk, are of a high magnitude, but are nonimminent because of reductions and restrictions on harvesting horseshoe crabs.

*Id*. at 53,759. Accordingly, the FWS designated the listing of the red knot as warranted but precluded pursuant to 16 U.S.C. § 1533(b)(3)(B)(iii), and assigned the species a priority level of 6 on a scale of 1 to 12 (1 being the highest priority). *Id*.

Following publication of the CNOR, appellants voluntarily dismissed their claim pertaining to the FWS's failure to abide by the response deadlines but did not seek leave to amend their complaint in order to challenge the warranted but precluded finding set forth in the CNOR. Thus, the only remaining claim before the District Court was that the denial of an emergency listing in

---

mechanisms;
(E) other natural or manmade factors affecting [the species'] continued existence.

*Id*. § 1533(a)(1). Appellants claim, as they did before the District Court, that the FWS's denial of their emergency listing requests was based on considerations that fell outside this narrow statutory framework and, therefore, was arbitrary and capricious. Given our disposition herein, we need not address this claim.

December 2005 was arbitrary and capricious. As noted above, the District Court concluded that the challenged action fell within the "discretion" exception to the APA, 5 U.S.C. § 701(a)(2), and dismissed appellants' claim as unreviewable.

## II.

The FWS argues that the District Court correctly concluded that appellants' claim was unreviewable and that any challenge to the denial of emergency rulemaking was rendered moot by the publication of the warranted but precluded listing in the CNOR. Although the District Court did not reach the issue of mootness, we will address it as a threshold matter as it implicates our jurisdiction. *See Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) (citing *Rogin v. Bensalem Twp.*, 616 F.2d 680, 684 (3d Cir. 1980)).

The mootness doctrine derives from Article III of the Constitution, which limits the "judicial Power" of the United States to the adjudication of "Cases" or "Controversies." U.S. Const. art. III, § 2; *see Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007). "[T]he central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003).

The only issue remaining in the complaint once the timeliness claim was dismissed was the propriety of the FWS's determination that an emergency listing of the red knot was not warranted. In the subsequent publication of the CNOR, however, the FWS concluded, after careful study and consideration of all possible factors, that listing of the red knot was, in fact, warranted but precluded by other listing priorities. Because appellants never sought to amend their complaint to contest in any way that conclusion, there is no issue for us to decide and no "meaningful relief" to award.

Appellants would have us reach back from the CNOR and declare the FWS's denial of emergency rulemaking violative of the ESA based on the FWS's consideration of what appellants allege

to be improper factors. We will not do so. Instructive in this regard is *Fund for Animals, Inc. v. Hogan*, 428 F.3d 1059 (D.C. Cir. 2005), in which the D.C. Circuit observed that "[t]his sequence of events is analogous to the merger of a preliminary injunction into a permanent injunction, upon which 'an appeal from the grant of [the] preliminary injunction becomes moot.'" 428 F.3d at 1064 (quoting *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 314 (1999)) (second alteration in original); *see also Save Our Springs Alliance v. Norton*, 361 F. Supp. 2d 643, 648 (W.D. Tex. 2005) (holding that a 90-day finding stating there was no emergency mooted the plaintiff's challenge for failure to make an emergency listing determination in its earlier letter). The December 2005 letter was never meant to be anything but an interlocutory pronouncement that circumstances did not warrant emergency attention; the FWS specifically noted that a final listing determination would be postponed in favor of additional, in-depth review, which review, when completed, was not challenged.

We note, as we conclude, that appellants have received quite substantial relief. Now that the CNOR has issued, the red knot is on the agency's watchlist. This means that the emergency monitoring system set forth at 16 U.S.C. § 1533(b)(3)(C)(iii) has become available in the event of exigent circumstances that warrant immediate protection of the red knot.[4]

### III.

We will dismiss the appeal as moot.

---

[4] Section 1533(b)(3)(C)(iii) directs the Secretary to "make prompt use of the authority under [16 U.S.C. § 1533(b)(7)] to prevent a significant risk to the well being" of a warranted but precluded species. 16 U.S.C. § 1533(b)(3)(C)(iii).

9