### COMISIÓN EJECUTIVA HIDROELÉCTRICA DEL RÍO

v.

### NEJAPA POWER COMPANY LLC, Appellant.

### No. 08–3518.

United States Court of Appeals, Third Circuit.

Argued May 28, 2009.

Filed: Aug. 3, 2009.

---

Joy M. Soloway, Esq., (Argued), C. Mark Baker, Esq., Kevin O'Gorman, Esq., Andrew P. Price, Esq., Fulbright & Jaworski, Houston, TX, John M. Seaman, Esq., Abrams & Laster, Wilmington, DE, for Appellant.

Daniel J. Rothstein, Esq., Flemming, Zulack & Williamson, New York, NY, for Amicus Appellant.

David M. Orta, Esq., (Argued), Arnold & Porter, Washington, DC, Karl G. Randall, Esq., Donald E. Reid, Esq., Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Appellee.

BEFORE: FISHER, CHAGARES and COWEN, Circuit Judges.

## OPINION

COWEN, Circuit Judge.

Appellant Nejapa Power Company, L.L.C. ("NPC"), appeals from the order of the United States District Court for the District of Delaware granting the application for discovery assistance filed pursuant to 28 U.S.C. § 1782 by Appellee Comisión Ejecutiva Hidroeléctrica del Río Lempa ("CEL"). NPC further challenges the District Court's denial of its subsequent motion for reconsideration. After the appeal was briefed on the merits, NPC filed a "conditional" motion to dismiss the entire appeal as moot. For the following reasons, we will grant this motion, dismiss the appeal as moot, vacate the District Court's judgment, and remand the matter to the District Court with instructions that it likewise dismiss CEL's § 1782 application as moot.

## I.

In 1994, El Salvador authorized the country's first private power generation project. CEL awarded the contract for the project to NPC, with the parties entering into a Power Purchase Agreement ("PPA") and the plant commencing operations in 1995. CEL then filed an arbitration proceeding against NPC. This first proceeding resulted in an eventual settlement between the parties, which was confirmed in an arbitration award. Pursuant to this award, CEL terminated the PPA and entered into a Transmission Cost Agreement ("TCA") with NPC.

The TCA provides that disputes between the parties shall be resolved by arbitration "in accordance with the then current United Nations Commission on International Trade Law Arbitration Rules ('UNCITRAL Arbitration Rules')." (A509.) In addition, the "seat of the arbitration shall be Geneva, Switzerland," with the arbitrator or "Arbitral Tribunal" required to apply the substantive law of El Salvador and the procedural law of Switzerland. (A509.)

Following a second arbitration proceeding (which was filed by NPC and ended in its favor), NPC served CEL with a Notice of Arbitration on July 5, 2007. This third arbitration proceeding involves CEL's alleged refusal to perform certain obligations under the TCA. An Arbitral Tribunal was constituted in May 2008, and

CEL filed a counterclaim against NPC. The Arbitral Tribunal scheduled the evidentiary hearing to begin on April 27, 2009.

Meanwhile, a dispute arose between the parties regarding the scope and timing of discovery in the arbitration proceeding. In essence, CEL wanted two rounds of document production, while NPC believed that a single round of limited discovery would be sufficient. The Arbitral Tribunal essentially agreed with NPC's discovery position, although it did offer a first round of document requests limited to documents "indispensable" to the parties' initial written submissions. On July 3, 2008, the Arbitral Tribunal issued Procedural Order No. 1 governing the scope of discovery and various procedural aspects of the arbitration proceeding. NPC further agreed to dispense with a limited first round of discovery. The Arbitral Tribunal accordingly issued Procedural Order No. 2 on July 8, 2008. This order, among other things, set forth the deadlines for discovery as well as for the parties' respective first and second written submissions.

On July 3, 2008, CEL filed ex parte applications for discovery "assistance" pursuant to 28 U.S.C. § 1782. One application was filed in the United States District Court for the District of Delaware, and it named NPC as the Respondent.[1] The District Court granted the application on July 18, 2008, expressly authorizing CEL to: (1) "take discovery relating to the is-

sues identified in CEL's application from Respondent ... including issuing a subpoena to NPC in the form attached as Appendix B;" and (2) "take the depositions of the NPC representatives identified in Appendix C and ... to issue a subpoena for the deposition of these representatives in the form attached as Appendix C." (A4.)

On July 25, 2008, NPC filed both a motion for reconsideration as well as a notice of appeal. The District Court denied the reconsideration motion on October 14, 2008, and NPC responded by filing a motion for a stay pending appeal, a motion to quash the subpoena, and a motion for a protective order on October 21, 2008. It also filed on the same day an amended notice of appeal, referencing both the reconsideration order as well the July 18, 2008 order granting the application. The District Court ultimately granted a stay pending appeal and quashed the subpoena without prejudice in an order entered on November 17, 2008.

NPC repeatedly attempted to obtain various forms of relief from the Arbitral Tribunal with respect to CEL's actions in federal court. The Arbitral Tribunal addressed its requests, as well as various discovery issues, in: (1) Procedural Order No. 3 filed on July 28, 2008; (2) a clarification letter dated August 8, 2008; (3) Procedural Order No. 4 filed on November 27, 2008; and (4) Procedural Order No. 5 also filed on November 27, 2008.[2] The Arbitral

1. The other application was filed in the United States District Court for the Southern District of Texas, and it named El Paso Corporation ("El Paso") as the Respondent. The Texas district court initially granted the application on July 8, 2008. But El Paso sought reconsideration, and the district court ultimately vacated its earlier order and quashed any discovery relating to the foreign arbitration proceeding on November 20, 2008. See La Comision Ejecutiva Hidroelecctrica Del Rio Lempa v. El Paso Corp., 617

F.Supp.2d 481, 487–88 (S.D.Tex.2008). CEL's appeal is currently pending before the Fifth Circuit (C.A. No. 08–20771).

2. In addition, the Arbitral Tribunal issued Procedural Order No. 6 on February 9, 2009. Among other things, the order dismissed CEL's requests for authorization to pursue the Fifth Circuit appeal and to defend this current appeal. It further reaffirmed the Arbitral Tribunal's previous orders and decisions.

Tribunal particularly emphasized that any documents obtained through the § 1782 procedures would have to be submitted pursuant to the already established requirements and timetable, and it expressly reserved its right to accept or reject any submitted evidence.

CEL filed its Submission No. 2 with the Arbitral Tribunal by the applicable deadline of April 1, 2009. This filing included briefing, documents, witness statements, and expert reports. The evidentiary hearing before the Arbitral Tribunal then began as scheduled on April 27, 2009. CEL's counsel argued that documents not included with the parties' previous submissions could not be offered or used by NPC. After three full days, the hearing concluded on April 29, 2009, when the Arbitral Tribunal confirmed that the evidentiary part of the hearing was now closed. Counsel for both parties expressed their satisfaction with the way the hearing had been conducted, and the Arbitral Tribunal indicated that it would work to issue its award by July 2009.

While the foreign arbitration proceeding was moving forward, CEL filed with this Court two separate motions to expedite. We denied the respective motions on December 15, 2008 and March 5, 2009. The Clerk also granted on April 29, 2009 the motion of Daniel J. Rothstein, Esq., for leave to proceed as amicus curiae, for leave to file addendum attached to amicus brief, for leave to file amicus brief out of time, and for leave to file an overlength amicus brief.

On May 12, 2009, NPC filed a "conditional" motion to dismiss the entire appeal. It specifically asks this Court to "vacate the district court's judgment and dismiss this appeal as moot, and remand this cause to the district court with instructions that it dismiss CEL's application as moot." (Appellant's Conditional Mot. at 12 (citation omitted).) CEL filed its opposition to this motion to dismiss, and amicus sought leave to file his own opposition as well. After NPC filed a reply, CEL moved for leave to file a sur-reply. We heard oral argument on both the motion to dismiss and the merits on May 28, 2009.

## II.

The statute at issue in this appeal, 28 U.S.C. § 1782, is entitled "Assistance to foreign and international tribunals and to litigants before such tribunals." It provides as follows:

(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

(b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

This statutory provision raises a number of difficult issues. In this appeal, the parties (and the amicus) disagree as to whether § 1782 applies to private foreign or international arbitration proceedings, especially in light of the Supreme Court's recent ruling in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). NPC further contends that, even if the statute authorizes discovery assistance in the arbitration context, the District Court still abused its discretion by granting CEL's ex parte application and then denying NPC's own motion for reconsideration. Nevertheless, we need not (and do not) reach these issues because this entire matter has become moot.

The doctrine of mootness arises out of Article III of the United States Constitution, which limits the federal "judicial power" to the adjudication of "cases" or "controversies." *See, e.g., Am. Bird Conservancy v. Kempthorne*, 559 F.3d 184, 188 (3d Cir.2009). "If one or more of the issues involved in an action become moot pending appeal or pending the decision of an appellate court, the adjudication of the moot issue or issues should be refused." *N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30 (3d Cir.1985). In such circumstances, the appellate court generally "will vacate the district court's decision and remand with directions to dismiss the action in order to strip the decision of legal consequences." *Id.* at 34 (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40–41, 71 S.Ct. 104, 95 L.Ed. 36 (1950)); *see also, e.g., Great W. Sugar Co. v. Nelson*, 442 U.S. 92, 92–94, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979) (per curiam).

Although the District Court stayed its order granting CEL's § 1782 application pending the outcome of this appeal, the arbitration proceeding itself has moved forward. NPC emphasizes the following three events: (1) the passing of the April 1, 2009 deadline for CEL to file with the Arbitral Tribunal its second written submission and accompanying evidence for the hearing; (2) the completion of the evidentiary hearing conducted by the Arbitral Tribunal between April 27, 2009 and April 29, 2009; and (3) the Arbitral Tribunal's statement at the end of the hearing that the evidentiary phase of the proceeding was now closed.

On the other hand, CEL vigorously denies that its § 1782 application has become moot. Pointing out that a case cannot be considered moot if discovery "could be 'used' in 'a foreign or international proceeding,'" (Appellee's Opp'n at 3 (quoting *Intel*, 542 U.S. at 246–47, 124 S.Ct. 2466)), CEL argues that it still has the ability to use evidence obtained through its application in the current arbitration proceeding. The dispositive issue accordingly appears to be whether CEL has any real opportunity to introduce or otherwise use evidence obtained pursuant to § 1782 in the *current* arbitration proceeding.[3] CEL turns to

---

**3.** This approach appears consistent with the case law discussed by the parties. *Compare In re Ishihara Chem. Co.*, 251 F.3d 120, 125–27 (2d Cir.2001) (concluding that application seeking discovery assistance in connection with patent invalidity proceeding before Japanese Patent Office ("JPO") was moot because, among other things, there was evidently no method under Japanese law by which applicant on its own could use new evidence in foreign proceeding after JPO conducted evidentiary hearing and because district court neither considered, nor was asked by appli-

two procedural mechanisms: (1) the "reopening" procedure established by Article 29(2) of the UNCITRAL Arbitration Rules; and (2) the "revision" procedure available under Swiss procedural law. We, however, must reject both of its theories.

Initially, CEL's various arguments are themselves undercut by some statements it previously made to this Court in support of its unsuccessful motions to expedite. For instance, it asked us to expedite the appeal on the grounds that:

> [F]rom a practical standpoint, absent an expedited appeal, the stay of the order granting the discovery threatens to effectively overturn this decision. Without an Order from this Court expediting the briefing schedule and allowing for a decision on the merits in time to complete production and review of the subpoenaed documents *before the Pending Arbitration on April 27, 2009,* this appeal will become *moot,* and CEL will be irreparably harmed.

(Appellee's Mot. to Expedite Appeal at 6 (emphasis added).) On the other hand, its expedition filings never mentioned any procedures for "reopening" the arbitration hearing or "revising" the arbitration award. At the very least, CEL's prior statements appear to call into question its current theories and provide some additional support for our ultimate finding of mootness. *See Ishihara,* 251 F.3d at 126 (noting that applicant previously represented to Court that it would be unable to use discovery after evidentiary hearing occurred).

In any case, CEL turns to the UNCITRAL Arbitration Rules to contend that, even though the Arbitral Tribunal noted that the evidentiary phase was closed at the end of the hearing, CEL still has an opportunity to introduce new evidence in the proceeding. CEL points to Article 29(2), which expressly states that " '[t]he arbitral tribunal may, if it considers it necessary owing to exceptional circumstances, decide, on its own or upon application of a party, to reopen the hearings at any time before the award is made.' " (Appellee's Opp'n at 6.) We, however, reject this "reopening" theory, primarily because of the past and current circumstances of the foreign arbitration proceeding itself.

CEL's theory does not really take into account the past history of the arbitration proceeding. The Arbitral Tribunal repeatedly and emphatically made clear that any documents obtained through the § 1782 process would have to be submitted pursuant to the Arbitral Tribunal's own directives and deadlines. Accordingly, Procedural Order No. 3 issued on July 28, 2008 stated "that all documents obtained through the Texas and Delaware Discovery process (if maintained) would have to be produced according to the procedural timetable, as provided by the Procedural Order No. 2." (A848.) Procedural Order No. 5 dated November 27, 2008 confirmed that "any documents that might be obtained through the pending Discovery procedures will have to be produced in the arbitration in compliance with the procedural rules set in Procedural Order No. 2."

cant to consider, filing of new invalidity proceeding), *overruled on other grounds by Intel,* 542 U.S. at 253–54, 259, 124 S.Ct. 2466, and *In re Euromepa, S.A.,* 154 F.3d 24, 28–30 (2d Cir.1998) (affirming district court's dismissal of § 1782 application as moot because, among other things, French Supreme Court refuses to hear and consider new evidence and French Supreme Court otherwise disposed of appeal), *with In re Grupo Qumma,*

*S.A.,* No. M. 8–85, 2005 WL 937486, at *2–*4 (S.D.N.Y. Apr.22, 2005) (granting § 1782 application filed in connection with Mexican civil court proceeding even though evidence period had allegedly expired because, inter alia, applicant was asking Mexican court for ruling allowing additional evidence and there was disagreement over proper translation and meaning of Mexican court's orders).

(A1013.) This November 27, 2008 order further reminded the parties that "all documentary evidence relied upon by the parties was required to be produced with the parties' first submissions (i.e., Claimant's August 21, 2008 Statement of Claim and Respondent's October 31, 2008 Statement of Defence and Counterclaims)" and that, "[a]s provided by Procedural Order No. 1, Section F. 1, the parties may only produce new documents with their Submission No. 2 insofar as necessary to respond to an argument or allegation of the other party." (A1013–A1014.) Since then, CEL timely filed its second written submission and accompanying documentation with the Arbitral Tribunal, the evidentiary hearing was conducted, and the arbitration record was closed. The Arbitral Tribunal also indicated that it would render its final award promptly, and the parties expect a decision soon. Simply put, the Arbitral Tribunal's own past rulings indicate that the time to submit any evidence in the current arbitration proceeding has passed.

CEL's conduct in the arbitration proceeding further highlights the deficiencies in its "reopening" theory. Initially, it has evidently offered nothing but speculation for its claim that the Arbitral Tribunal *may* reopen the proceeding. In fact, it has not filed any motion for reopening with the Arbitral Tribunal, and there is no indication that it even informed the Arbitral Tribunal of the possibility that such a motion would be filed in the future based on the ultimate outcome of this § 1782 proceeding. *See, e.g., Grupo Qumma*, 2005 WL 937486, at *2 (noting that applicant "is continuing to make efforts in the Mexican proceedings to obtain a ruling that it is not precluded from offering additional evidence"). It similarly never requested an extension of time with respect to either the submission deadlines or the date for the evidentiary hearing itself. On the contrary, it offered no objection to the closure at the end of the evidentiary hearing, and

its counsel actually complimented the Arbitral Tribunal for its handling of the proceeding. CEL's attorney even sought to preclude NPC from using any documents at the evidentiary hearing that were not attached to the parties' earlier submissions. Such actions do not appear to be consistent with a party who anticipates filing a motion to reopen in order to present yet more evidence.

CEL alternatively argues that, even after the Arbitral Tribunal makes its award, it could still take advantage of a "revision" procedure available under Swiss law. Relying on a letter provided by an expert on Swiss law, it contends that a party may seek the "revision" of an arbitral award in the Swiss Federal Supreme Court based on newly-discovered evidence. If the party meets the (apparently strict) requirements established by Swiss law, the Swiss court evidently will cancel the arbitral award and remit the case back to the original arbitral tribunal, which then will consider the new facts or evidence. According to CEL, this whole process represents a "continuation" of the arbitration proceeding itself. NPC does not contest the existence of this "revision" procedure. But, with the support of a letter from a Swiss law specialist, it does argue that the procedure constitutes a new proceeding as opposed to a mere "continuation" of the underlying arbitration proceeding. While CEL vigorously defends the "continuation" characterization, we ultimately find that, at least for purposes of § 1782 and the mootness inquiry, the "revision" procedure should be considered a new proceeding.

Simply put, too much has happened in this matter for any judicial "revision" procedure to be considered part of the underlying arbitration proceeding. As already noted, the arbitration proceeding referenced in the application and the underlying District Court orders is nearly over, with

the parties simply waiting for a decision from the Arbitral Tribunal. The Supreme Court in *Intel* emphasized that "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at 264, 124 S.Ct. 2466 (citation omitted). It then went on to identify several factors that could be taken into consideration by the district court in its exercise of discretion. *Id.* at 264–65, 124 S.Ct. 2466. In this case, the District Court purported to exercise its discretion under § 1782 with respect to an ongoing (and almost finished) *arbitration proceeding*. It obviously did not consider whether the applicable factors supported granting discovery assistance for some future *judicial proceeding* before the Swiss Federal Supreme Court. Because the district courts are vested with the discretion to make the fact-specific determination of whether to grant discovery assistance, it would not be proper for this Court to determine in the first instance whether discovery assistance should be granted with respect to a speculative "revision" procedure. At the very least, CEL should file a new application in the District Court premised on this theory of "revision."

In the end, we must reject both the "reopening" and "revision"[4] theories offered by CEL and find that this entire matter has become moot.[5] In similar circumstances, the Second Circuit vacated the order compelling the production of discovery and remanded the case with instructions for the district court to dismiss the § 1782 application as moot. *See Ishihara*, 251 F.3d at 122–23, 127. We will follow the Second Circuit's example.

## III.

For the foregoing reasons, we will grant NPC's "conditional" motion to dismiss, dismiss the appeal as moot, vacate the District Court's judgment, and remand the matter to the District Court with instructions that it dismiss CEL's § 1782 application as moot.

---

4. We further note that, at least according to NPC's Swiss law expert, a party generally has up to ten years to file its "revision" action so long as it is also filed within 90 days from discovering the grounds for revision. Furthermore, the time limit does not even apply if the ground for revision is a criminal act. If we therefore were to accept the logic of CEL's approach, we evidently could not consider the current matter moot until *2019*. Such a result appears absurd and inconsistent with fundamental principles of mootness.

5. We likewise reject the amicus's assertion that NPC's motion to dismiss should be rejected because, "if discovery is permitted, but the arbitrators nonetheless refuse to reopen the arbitration and consider the new evidence, CEL might be able to challenge the arbitral award on the grounds that the arbitrator did not provide CEL with a full opportunity to present its case." (Amicus Opp'n at 1.) Such a highly speculative set of circumstances has no real bearing on the mootness question currently before us.