NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1320
_____

GARRETT WILLIAMS,

Appellant

v.

*SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
CATHERINE MCVEY, Chairman of the Pennsylvania Board of
Probation and Parole, in their official capacities

*(Pursuant to Rule 43(c), Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-09-cv-01587)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 19, 2011

Before:  FISHER, HARDIMAN and GREENAWAY, Jr., *Circuit Judges*.

(Filed: October 7, 2011 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Garrett Williams appeals from an order of the District Court granting Defendants' motion for judgment on the pleadings as to his claim for declaratory relief and dismissing as moot his request for injunctive relief. For the reasons stated below, we will affirm the District Court's decision as to injunctive relief and vacate and remand for dismissal as to Williams's claims for declaratory relief.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In 2000, Garrett Williams was convicted of involuntary deviate sexual intercourse, aggravated indecent assault, corruption of minors, and endangering the welfare of children. He was sentenced to eight to sixteen years' imprisonment, to be served in the custody of the Pennsylvania Department of Corrections ("the DOC"). On May 15, 2008, Williams was granted conditional parole by the Pennsylvania Board of Probation and Parole ("the Parole Board"). Among the conditions of his parole was a requirement that he secure placement in a community correction center ("CCC") prior to his release from prison.

The Parole Board has long relied on CCCs to provide halfway house services to inmates released on parole. Often, release on parole is explicitly conditioned on placement in such a facility. CCCs are operated primarily by private contractors under

the supervision of the DOC, and are geographically distributed throughout Pennsylvania. Some CCCs are operated directly by the state. Privately-owned CCCs categorically exclude sex offenders, primarily because of opposition by local residents and restrictions on sex offender occupancy. Although some state-operated CCCs accept sex offenders, the number of placements available to sex offenders is limited. Similar restrictions have not been adopted for any other category of paroled offender.

On August 17, 2009, Williams filed a complaint pursuant to 42 U.S.C. § 1983 in the U.S. District Court for the Middle District of Pennsylvania, alleging that the CCC policy regarding placement of sex offenders violates his constitutional rights under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment and his rights under the Fair Housing Act, 42 U.S.C. §§ 3601-3619. Williams sought both declaratory and injunctive relief. Jeffrey Beard, Secretary of the DOC,[1] and Catherine McVey, Chairwoman of the Parole Board ("Defendants"), were named as defendants.

Defendants filed a motion for judgment on the pleadings as to each of Williams's claims. On October 27, 2009, the Parole Board modified its order requiring Williams to obtain placement in a CCC, and on December 6, 2009, released him directly to a Philadelphia apartment he had previously secured, subject to his continued participation

---

[1] On May 4, 2011, John Wetzel was confirmed as the new Secretary of the DOC, and pursuant to Fed. R. App. P. 43(c)(2), he was automatically substituted as a party in this case.

3

in, and completion of, sex offender treatment. The condition that he first secure placement in a CCC was removed.

On November 1, 2010, Magistrate Judge Thomas M. Blewitt issued a report and recommendation ("R&R"), recommending that Defendants' motion for judgment on the pleadings be granted as to Williams's claim for declaratory relief. Judge Blewitt recommended that Williams's claim for injunctive relief be dismissed as moot because he had been released on parole and was no longer required to seek admission to a CCC. Because Defendants did not raise the issue of whether Williams's declaratory relief claim was also moot, Judge Blewitt did not address it. The District Court adopted the R&R in its entirety. Williams subsequently filed a motion for reconsideration, which was denied. He filed a timely notice of appeal.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Because we resolve this case solely on mootness grounds, we need not (and do not) address the District Court's decision regarding the merits of Williams's claims. "Questions of mootness are considered under a plenary standard of review." *International Brotherhood of Boilermakers v. Kelly*, 815 F.2d 912, 914 (3d Cir. 1987) (citations omitted). The doctrine of mootness is rooted in Article III of the Constitution, which limits federal courts to the adjudication of "cases" or "controversies." *Am. Bird Conservancy v. Kempthorne*, 559 F.3d 184, 188 (3d Cir. 2009). "If one or more of the issues involved in an action become

4

moot . . . the adjudication of the moot issue or issues should be refused." *N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30 (3d Cir. 1985). When a case is rendered moot, "[w]e will vacate the district court's decision and remand with directions to dismiss the action in order to strip the decision of legal consequences." *Id.* at 34 (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40-41 (1950)).

Because mootness implicates the subject matter jurisdiction of the federal courts under Article III, a mootness challenge is never waivable. *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 346-47 (3d Cir. 2003). "[N]o action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Accordingly, we must now consider not only whether the District Court correctly determined that Williams's claim for injunctive relief was moot, but also whether his claim for declaratory relief is moot.

### III.

First, we address Williams's contention that the District Court erred in adopting the finding of the Magistrate Judge that his request for injunctive relief was moot. "[T]he central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 39 (3d Cir. 1985) (citation omitted). Williams seeks an injunction requiring the elimination of distinctions between sex offenders and other offenders with respect to CCC placement. However, because he has been released and the condition that he obtain placement in a CCC has

5

been waived, he no longer needs to be treated as a non-sex offender. Removal of the distinction between sex offenders and non-sex offenders would not provide him any meaningful relief.

The District Court, adopting the Magistrate Judge's R&R, correctly found that *United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980), is inapposite. In *Geraghty*, a prisoner in federal custody who had been denied parole brought a putative class action challenging the federal parole release guidelines. *Id.* at 393. He was released from prison while his appeal was pending. *Id.* at 394. The Court concluded that "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim." *Id.* at 404. The Court explained that a plaintiff who brings a class action presents two separate issues for judicial resolution: (1) his claim on the merits and (2) his claim that he is entitled to represent the class. *Id.* at 402. Thus, even if the named plaintiff's claim on the merits is rendered moot, he "retains a 'personal stake' in obtaining class certification sufficient to assure that Art. III values are not undermined." *Id.* at 404. Here, Williams did not file a class action and thus *Geraghty* does not apply. The fact that the Community Justice Project receives numerous requests for representation from other sex offenders impacted by the CCC policy is irrelevant. Their potential claims are not at issue in this case.

Williams's reliance on *Jago v. Van Curen*, 454 U.S. 14 (1981), is similarly misplaced. In that case, a prisoner brought a habeas action challenging the revocation of his parole. *Id.* at 16. Although he was released while his appeal was pending, he

6

remained subject to the conditions imposed by his parole. *Id.* at 21 n.3. The Court held that, although the prisoner had been released, the case was not moot because he could be incarcerated again upon violation of the conditions of his parole. *Id.* The fact that *Van Curen* involved a habeas petition – not a § 1983 action – is significant. Section 1983 is not the proper vehicle when the claim seeks "core habeas corpus relief, *i.e.,* where a state prisoner requests present or future release." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (internal quotations omitted). The Court in *Van Curen* explained that had the defendants not revoked the prisoner's parole, his release would not have been delayed and the term of his parole would likely have expired. *Van Curen*, 454 U.S. at 21 n.3. Unlike the remedies available under § 1983, "the flexible nature of habeas relief" would allow the district court to order that the parole restrictions be terminated. *See id.*

In the present case, there is no indication that, even if CCCs were required to treat all offenders alike, Williams would have been released earlier. In fact, by bringing his claims under § 1983, Williams necessarily undercuts any argument he might have under *Van Curen*. *See Wilkinson*, 544 U.S. at 81. He concedes that, "[e]ven if successful . . . an unknown condition to CCC placement, having to do with beds becoming available or being added and the number of eligible parolees ahead of him, must be satisfied." Thus, unlike in *Van Curen*, Williams has not alleged that he would be free of parole restrictions but for the challenged action, and accordingly he suffers no continuing injury as a result of the CCC policy. *See Van Curen*, 454 U.S. at 21 n.3. An injunction would offer no meaningful relief.

7

We next address whether Williams's claim for declaratory relief is also moot. A live controversy can exist as to declaratory relief even if a request for injunctive relief is rendered moot. *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121-22 (1974); *Winston by Winston v. Children & Youth Servs. of Delaware County*, 948 F.2d 1380, 1384 (3d Cir. 1991). This case, however, does not present such a situation. Williams argues that because his injury is capable of repetition, yet will inevitably evade judicial review, he retains a sufficient stake in the controversy. We disagree. "The exception from the mootness doctrine for cases that are technically moot but 'capable of repetition, yet evading review' is narrow and available 'only in exceptional circumstances.'" *Rendell v. Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). The exception only applies when "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). In this case, Williams has not established a sufficiently reasonable expectation that he will once again be subject to the challenged CCC policy.

Williams could only again be subject to the policy at issue if he commits another crime or otherwise violates his parole. Although recidivism rates may indicate that he is more likely than others in society to engage in criminal behavior, we refuse to assume that he will do so. As the Supreme Court made clear, he is "able – and indeed required

8

by law – to prevent such a possibility from occurring."[2] *Spencer v. Kemna*, 523 U.S. 1, 15 (1998) (quoting *Lane v. Williams*, 455 U.S. 624, 633 n.13 (1982)). We must assume that Williams will comply with the law.

A closer question is whether the potential for a "technical" parole violation[3] establishes the reasonable expectation of repetition required by the exception. Because we find the primary case on which Williams relies distinguishable, we hold that it does not. Williams points out that the restriction on sex offender placement in CCCs is due in large part to community opposition. Such staunch anti-sex offender sentiment, he argues, increases the risk of a technical violation. For example, he says that public pressure on his employer or landlord might cause him to lose his job or housing, events which could lead to a technical parole violation. The likelihood of this happening is so great, Williams maintains, as to bring his case within the ambit of the "capable of repetition, yet evading review" exception.

Williams draws our attention to *Winston by Winston v. Children and Youth Services of Delaware County*, in which we held that a conditional return of parental custody did not moot the parents' challenge to the state's visitation policies, because

---

[2] Williams argues that because he cannot avail himself of reintegration assistance programs provided by CCCs, he is more likely to re-offend. Regardless of whether a parolee has the benefit of such a program, he is obligated to refrain from future criminal activity. Thus, Williams's argument on this point is unavailing.

[3] A "technical violator" is a parolee who "violates the terms and conditions of his parole, other than by the commission of a new crime." 61 PA. CONS. STAT. § 6138(c)(1).

9

circumstances indicated that the parents could once again be subject to those policies. 948 F.2d at 1384. In that case, the three-year-old son of Maryann and Samuel Winston was taken into protective custody by the child services agency because Samuel was arrested in connection with a drug violation and Maryann was hospitalized due to recurrent psychiatric and substance abuse problems. *Id.* at 1382. The parents, dissatisfied with the limitations placed on their visitation rights, brought a challenge to the state's visitation policy under § 1983. *Id.* Before the case was resolved, the child was returned to his father's custody. *Id.* We rejected the state's argument that the action was moot, reasoning that "legal custody was returned to the parents only subject to conditions which, if not complied with, could subject them to a repeat of the situation which precipitated this lawsuit." *Id.* at 1384.

*Winston* is distinguishable on its facts. The possibility that Williams might be evicted or lose his job because of public opposition to sex offenders is highly speculative, surely far more so than the possibility that a "family unit, composed . . . of two parents who have a history of drug use," could experience "another breakdown requiring [the state] to retake temporary custody of [the child]." *See id.* There is no evidence to support Williams's claims that he might be evicted or lose his job. Assuming Williams's landlord or employer is unaware of his status as a sex offender, he or she would have to learn of his status and then bow to public pressure to fire or evict Williams. The Parole Board would have to deem this a parole violation and revoke his parole. Even then, Williams would not be subject to the CCC policy unless he was subsequently granted

10

parole under the same conditions originally imposed in this case.  Such a series of events is speculative and does not establish a reasonable expectation that Williams will be subject to the challenged policy again.[4]  Thus, we cannot conclude that this is one of those "exceptional circumstances," in which the "capable of repetition, yet evading review" exception applies.  *See Rendell*, 484 F.3d at 241.

IV.

For the foregoing reasons, we will affirm the order of the District Court finding Williams's claim for injunctive relief moot, vacate the order of the District Court as to Williams's claim for declaratory relief, and remand with instructions to dismiss the declaratory relief claim on mootness grounds.

---

[4] Williams argues that the CCC policy regarding sex offenders also affects his eligibility for the Half-Way Back program, which allows parolees who commit technical violations to occupy CCCs and receive assistance in finding a residence or employment, rather than be re-incarcerated.  The chance that Williams would commit a technical violation, meet the qualifications for the program, and then be excluded because he is a sex offender is similarly speculative.