NYGAARD, Circuit Judge.
Pennsylvania Governor Edward Rendell and other various elected officials brought an action in the District Court testing the legality of recommendations made by Secretary of Defense Donald Rumsfeld (hereinafter, Secretary) to deactivate the 111th Fighter Wing of the Pennsylvania National Guard. The District Court ruled that the Secretary’s recommendations were invalid and the Secretary has appealed.
I.
The District Court addressed two issues on motions for summary judgment: first, whether the Secretary of Defense can legally recommend deactivating the 111th Fighter Wing without the prior consent of the Governor of Pennsylvania; and, second, whether the portion of the Department of Defense report that recommends deactivation of the 111th Fighter Wing is null and void because Governor Rendell did not consent to the deactivation. The District Judge concluded that the Secretary’s recommendation violated 32 U.S.C. § 104(c), which reads:
To secure a force the units of which when combined will form complete higher tactical units, the President may designate the units of the National Guard, by branch of the Army or organization of the Air Force, to be maintained in each State, the Commonwealth of Puer-to Rico, the District of Columbia, Guam and the Virgin Islands. However, no change in the branch, organization, or allotment of a unit located entirely within a State may be made without the approval of its governor. (Emphasis added)
The District Court based its conclusion on the premise that the Secretary’s recommendation was equivalent to a change and, hence, violated the italicized portion of the provision. On appeal the Secretary argues that the District Court’s order should be vacated as moot; or in the alternative, that if not moot, should be reversed as non-justiciable.
We need not address the issue of justici-ability because we conclude that the case is now moot. Hence we will vacate the District Court’s February 7, 2005 Order, and remand the cause to the District Court with instructions to dismiss the case as moot. See United States v. Munsingwear, 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950).
II.
The facts germane to our review are neither complex nor extensive. They begin in 1990 when Congress enacted the Defense Base Closure and Realignment Act. (DBCRA) Its purpose was to “provide a fair process that will result in the timely *239 closure and realignment of military installations inside the United States,” DBCRA, § 2901(b).[1] Upon enactment, the DBCRA established the process for identifying military installations for closure and became “the exclusive authority for closure and realignment” of any such installation. DBCRA, § 2909(a). The DBCRA, inter alia required the Secretary of Defense to recommend to the Commission bases he had identified for closure. The DBCRA further required the Commission to hold public hearings on the Secretary’s recommendations, prepare a report on his recommendations, and then publish its conclusions and recommendations as to which units should be deactivated and which bases should be closed.
The DBCRA required the Commission to send its conclusions and recommendations to the President, who was then obligated to issue his own report “containing his approval or disapproval of the Commission’s recommendations.” DBCRA § 2914(e)(1). The statute “does not at all limit the President’s discretion in approving or disapproving the Commission’s recommendations.” Dalton v. Specter, 511 U.S. 462, 476, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994). Nonetheless, the President could not select from among the Commission’s recommendations piecemeal, but was required either to accept or reject the Commission’s recommendations in their entirety. Id. at 470, 114 S.Ct. 1719, DBCRA § 2903(e). The President’s report (and list of recommended closures) was then to be sent to Congress with his certification of approval. The DBCRA gave Congress forty-five days in which to disapprove and reject the President’s report, before it became final. It is only when this process was complete and after the President’s report became final that the Secretary of Defense was empowered to close any base, to deactivate any Wing or Unit, or to realign or combine any Wings or Units.
The process outlined above was followed precisely. As required by the DBCRA, Secretary Rumsfeld sent his recommendations to the Commission. The recommendation at issue in this case reads as follows:
Close Naval Air Station Joint Reserve Base Willow Grove, PA. Relocate all Navy and Marine Corps Squadrons, their aircraft and necessary personnel, equipment and support to McGuire Air Force Base, Cookstown, NJ ... Deactivate the 111th Fighter wing (Air National Guard) and relocate assigned A-10 aircraft [to other Air National Guard units].
On the same day that the District Court entered its order, the Commission met to consider the Secretary’s recommendations. The Commission was unanimous in its vote to strike the following language from the Secretary’s report: “Deactivate the 111th Fighter Wing (Air National Guard) and relocate assigned A-10 aircraft to [other units].” Commission Transcript at 135-137. The Commission’s final report to the President incorporated these deletions. It also “encourage[d] the DoD to consider identifying A-10 aircraft to form an A-10 Wing or detachment using the 111th ...” Commission Report at 96. The report contained the following concerning the tilth’s future:
If the Commonwealth of Pennsylvania decides to change the organization, composition and location of the 111th Fighter Wing (ANG) to integrate the unit into the Future Total Force, all personnel *240 allotted to the 111th Fighter Wing (ANG) ... will remain in place and assume a mission relevant to the security interests of the Commonwealth of Pennsylvania and consistent with the integration of the unit in to Future Total Force ... This recommendation does not effect a change to the authorized end-strength of the Pennsylvania Air National Guard ...
Commission Report at 96-97.
The Commission then sent its Report to the President. He approved it and sent the Report to Congress with a letter that certified his approval of “all the recommendations contained in the Commission’s report.” The House of Representatives rejected a disapproval resolution by a vote of 324 to 85. The Senate never voted. Forty five days passed and the Commission’s recommendations became law.
At this point, and only at this point, the Secretary became authorized to implement the Commission’s recommendations, the President’s Report, and the final Act of Congress. Congressional authority for the Commission expired on April 15, 2006, and the Commission ceased to exist.
III.
As noted, Governor Rendell, Senators Specter and Santorum' filed suit against Secretary Rumsfeld contending that 32 U.S.C. § 1049(c) forbade any “change in the branch, organization or allotment of a [National Guard] unit located entirely within a State .. without the approval of that State’s governor.” They sought a declaration that “Secretary Rumsfeld may not, without first obtaining Governor Rendell’s approval, deactivate the 111th Fighter Wing.” The District Court’s order granting summary judgment for plaintiffs declared that;
a. Secretary Rumsfeld, by designating the 111th Fighter Wing of the Pennsylvania National Guard [for deactivation] without first obtaining the approval of governor Rendell, has violated 32 U.S.C. § 104(c).
b. The portion of the [Secretary’s] report that recommends deactivation of the 111th Fighter Wing of the Pennsylvania Air National Guard is null and void.
IV.
We have an independent obligation at the threshold to examine whether we have appellate jurisdiction. Lorillard Tobacco Co. v. Bisan Food Corp. 377 F.3d 313, 318 (3d Cir.2004) (citing Gov’t of V.I. v. Hodge, 359 F.3d 312, 317 (3d Cir.2004)). Our mootness analysis “traditionally begins with ‘the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.’ ” Intn’l Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 914 (3d Cir.1987) (quoting North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)). The existence of a case or controversy, in turn, requires “ ‘(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution.’ ” Id. at 915 (quoting Dow Chem. Co. v. EPA, 605 F.2d 673, 678 (3d Cir.1979)). “The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.” In re Surrick, 338 F.3d 224, 230 (3d Cir.2003).
Moreover, it does not matter when the case becomes moot. The requirement that a case or controversy be “actual [and] *241 ongoing” extends throughout all stages of federal judicial proceedings, including appellate review. Khodara Envtl., Inc. v. Beckman, 237 F.3d 186, 193 (3d Cir.2001). Hence, if a case becomes moot after the District Court enters judgment, an appellate court no longer has jurisdiction to review the matter on appeal. Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895). In other words, would the District Court’s declaration “serve [any] purpose today[?]” Khodara, 237 F.3d at 194.
The only issue raised by the Governor’s complaint and addressed by the District Court’s opinion and order was the legality of the Secretary’s recommendation to deactivate the 111th Fighter Wing. “This action arises out of the Department of Defense’s .. attempt ... to deactivate the 111th Fighter wing ...” App. at 75. The District Court’s order declares that “[t]he portion of the [Secretary’s] report that recommends deactivation ... is null and void.” App at 54. However, neither the Secretary’s recommendation nor the District Court’s declaration have any vitality, nor would they “serve [any] purpose today.” Khodara 237 F.3d at 194. The Commission rejected the Secretary’s recommendation. Indeed in its Report it stated that “[i]f the Commonwealth of Pennsylvania decides to change the organization, composition and location of the 111th Fighter Wing ..., all personnel allotted to the 111th Fighter Wing ... will remain in place and assume a mission relevant to the security interests of [Pennsylvania].” Commission Report at 96-97.
We conclude that there is simply no controversy remaining here. Secretary Rumsfeld did not change anything — nor was he empowered to do so. The recommendation he made to the DBCRA to deactivate the 111th Fighter Wing was not a change; and not followed by the Commission or the President, or was never considered by Congress. The Commission’s Recommendations, the President’s Report, and Congress’ acquiescence have fully nullified Secretary Rumsfeld’s recommendation, and rendered the District Court’s declaration wholly unnecessary.
V.
Moreover, the Governor’s challenge does not fall within any of the recognized exceptions to the mootness doctrine. Under the “capable of repetition” exception, for example, a court may exercise its jurisdiction and consider the merits of a case that would otherwise be deemed moot when “(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.” Spencer v. Kemna, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); see also In re Price, 370 F.3d 362, 381 (3d Cir.2004) (Sloviter, J., dissenting). The exception from the mootness doctrine for cases that are technically moot but “capable of repetition, yet evading review” is narrow and available “only in exceptional situations.” City of Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675, (1983); Weinstein v. Bradford, 423 U.S. 147, 148-49, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).
The Governor argues that the life of the Secretary’s recommendation was really too short to be litigated before it expired and thus, incapable of review. He may be right. However, the duration of the life of the Secretary’s recommendation is not significant because there is no reasonable likelihood that the alleged harm will occur again to the same complaining parties. See Belitskus v. Pizzingrilli, 343 F.3d 632, 648 (3d Cir.2003). The recently completed process under the DBCRA was the final *242 round of closures permitted by the statute. Federal law no longer provides a mechanism for the Secretary to repeat the alleged harm, nor does it even provide for the continued existence of a Base Closure and Realignment Commission. See DBCRA, § 2912(d)(4) (“the Commission appointed under the authority of this subsection shall meet during the calendar year 2005 and shall terminate on April 15, 2006.”). In Khodara, supra, we noted with approval the Fourth Circuit Court of Appeals holding that “statutory changes that discontinue a challenged practice are usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the law suit is dismissed.” Khodara, 237 F.3d at 194 (citing Valero Terrestrial Corp., v. Paige, 211 F.3d 112, 116 (4th Cir.2000)) (quoting Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1510 (9th Cir.1994)).
Further, we have clearly held that a party can rarely, if ever, be injured by a proposed base closing before a decision is made to close that base. Any actions of the Secretary of Defense and the Commission before the President’s decision are merely preliminary in nature. Specter v. Garrett, 971 F.2d 936, 946 (3d Cir.1992) vacated on other grounds 506 U.S. 969, 113 S.Ct. 455, 121 L.Ed.2d 364 (1992). Nothing has changed to alter the basic tenets of this holding and it is controlling in this appeal. For the alleged harm to occur again Congress would have to pass another law calling for a new round of base closures; the new law would have to give the Secretary a recommending role similar to the one at issue here; and the new Secretary would again have to recommend deactivating the 111th Fighter Wing. It would be speculation upon speculation were one to attempt a prediction whether a future Congress may re-authorize another new Commission; whether a new Secretary of Defense may recommend that the 111th Fighter Wing of the Pennsylvania National Guard at Willow Grove be deactivated; or what a new Base Closure Commission would do about it; and whether the next President would thereafter approve deactivation. There is simply no likelihood at all that this, or a future Governor of Pennsylvania “will be subject to the same action again.” Belitskus, 343 F.3d at 648.[2]
Nonetheless, a District Court’s judgment is vacated “only where mootness has occurred through happenstance — circumstances not attributable to the parties.” Arizonans for Official English v. Arizona, 520 U.S. 43, 71, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); New Jersey Turnpike Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 26-27 (3d Cir.1985). This is known as the voluntary-cessation doctrine and is another exception to mootness. “Mere voluntary cessation of allegedly illegal conduct does not moot a case.” United States v. Phosphate Export Ass’n, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).
The reasons for this are patent and related to the “capable of repetition yet evading review” exception. That is to say if we were to hold such a case moot “the courts would be compelled to leave the defendant free to return to his old ways.” Id. Consequently, if the defendant ceases the harm, the case retains vitality unless, “subsequent events ma[k]e it absolutely *243 clear that the allegedly wrongful behavior could not reasonably be expected to recur.” Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).
The purpose of this exception is to prevent defendants from “forever avoid[ing] judicial review simply by ceasing the challenged practice, only to resume it after the case [is] dismissed.” Northeastern FL Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 676, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (O’Connor, J., dissenting).
Here the only defendant is Secretary Rumsfeld, and he has not voluntarily ceased anything. As noted, he made a recommendation that was roundly rejected. The Commission, the President, and Congress — all non-parties — have defused the gravamen of the plaintiffs’ complaint and effectively nullified the District Court’s declaratory order. Here, the voluntary-cessation exception simply does not apply.
VI.
Because this case is moot, and no exceptions apply, we must decide upon the appropriate remedy. The Supreme Court’s decision in United States v. Mun-singwear supplies the general rule: “The established practice ... in dealing with a civil case ... which has become moot while [under review] is to reverse or vacate the judgment below and remand with a direction to dismiss.” 340 U.S. at 39, 71 S.Ct. 104. The Munsingwear rule is an equitable one that is “commonly used to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences.” Donovan ex rel. Donovan v. Punxsutawney Area School Bd., 336 F.3d 211, 217 (3d Cir.2003) (citing Munsingwear, 340 U.S. at 41, 71 S.Ct. 104).
Where as here, the case became moot through the “vagaries of circumstance[s]” not attributable to the defendant, Mun-singwear controls, and the general rule of vacatur is specifically indicated. U.S. Bancorp Mortgage Co., v. Bonner Mall P’ship., 513 U.S. 18, 25, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). Therefore, we conclude that this case meets the test for vacatur. Once again, we find our decision in Khodara instructive. In Khodara, the case became moot while on appeal because Congress repealed the challenged law. We reasoned that legislative repeal of a challenged law did not suggest- either manipulation of the legal system, or an attempt to erase an unfavorable precedent. Khodara 237 F.3d at 194-195. Like the Congressional repeal in Khodara, the Commission here was fulfilling its statutory role — not attempting to manipulate the system — and there is nothing on this record to indicate that Congress was aware of the District Court’s order. On balance, we conclude that it is most equitable to “wipe the slate clean,” and eliminate the possibility of any adverse legal consequences. See Munsingwear, 340 U.S. at 40, 71 S.Ct. 104 (stating vacatur “clears the path ... and eliminates a judgment, review of which was prevented through happenstance.”).
VII.
In summary, because this case is moot, we will VACATE the District Court’s February 7, 2005 order and REMAND the cause to the District Court with instructions to dismiss the case as moot.

. The DBCRA was originally enacted as Part A of Title XXDÍ of Public Law 101-510, 104 Stat. 1808 (1990) and has since been amended. Citations in this opinion are to the text of the statute reprinted as a Note following 10 U.S.C. § 2687.

. It is worth noting in the margin that during the pendency of this appeal, Secretary Donald Rumsfeld has resigned and his replacement confirmed by the Senate; Senator Santorum has been defeated for reelection; control of the Congress that enacted the expired DBCRA has shifted from Republican to Democratic control; and, before a new Commission could be activated, a new president will have been elected.