

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-2008

# Sierra Club v. US Army Corps of Eng

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4887

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Sierra Club v. US Army Corps of Eng" (2008). *2008 Decisions.* Paper 1226.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1226

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4887
_____

SIERRA CLUB, NEW JERSEY PUBLIC INTEREST RESEARCH
GROUP CITIZENS LOBBY, INC., and NEW JERSEY ENVIRONMENTAL
FEDERATION,
Appellants

v.

UNITED STATES ARMY CORPS OF ENGINEERS, COLONEL RICHARD J. POLO,
JR., and MEADOWLAND MILLS/MACK-CALI LIMITED PARTNERSHIP

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 05-cv-01724)
District Judge:  Honorable Joel A. Pisano

_____

Argued March 26, 2008

Before:  McKEE, RENDELL and TASHIMA[*], Circuit Judges

(Filed: May 14, 2008)

_____

Edward Lloyd, Esq. (Argued)
Columbia University School of Law
435 West 116th Street
New York, NY 10027-0000

_____

[*] Honorable A. Wallace Tashima, Senior Judge of the United States Court of Appeals
for the Ninth Circuit, sitting by designation.

*Attorney for Plaintiff-Appellant*

Michael T Gray, Esq. (Argued)
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 23795
L'Enfant Plaza Station
Washington, D.C.  20026

Virginia S. Albrecht, Esq.
David J. DePippo, Esq.
David C. Lashway, Esq.
Eric J. Murdock, Esq. (Argued)
Hunton & Williams
1900 K Street, N.W.
Suite 1200
Washington, D.C.  20006

Benjamin Clarke, Esq.
Michael R. Cole, Esq.
DeCotiis, Fitzpatrick Cole & Wisler
500 Frank W. Burr Boulevard
Glenpointe Centre West
Taneck, NJ 07666

*Attorneys for Defendant Appellee*

---

## OPINION OF THE COURT

---

TASHIMA, *Senior Circuit Judge*.

At the heart of this case lie 7.69 acres of wetlands once located in the

Meadowlands Sports Complex ("MSC"), a 684-acre property located in the Hackensack

Meadowlands of East Rutherford, New Jersey. On March 18, 2005, Defendant-Appellee United States Army Corps of Engineers ("Corps") granted Defendant-Appellee Meadowland Mills/Mack-Cali Limited Partnership[1] ("Partnership") a permit to fill the wetlands pursuant to Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344. Plaintiffs Sierra Club, New Jersey Public Interest Group Citizens Lobby, Inc., and New Jersey Environmental Federation brought suit challenging the legality of the permit, contending violations of the CWA, 33 U.S.C. §§ 1251-1387; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-596; the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4375; the Rivers and Harbors Act, 33 U.S.C. §§ 401-467n; and implementing regulations. The District Court granted summary judgment in favor of Defendants on all claims. See Sierra Club v. U.S. Army Corps of Eng'rs, 450 F. Supp. 2d 503 (D.N.J. 2006). Because all but 0.12 acres of the 7.69 acres of wetlands have been filled and construction on top of the former wetlands is substantially complete, we can no longer provide Plaintiffs with any meaningful relief. Accordingly, we vacate the district court's opinion and remand with instructions to dismiss the action as moot.

Because we write for the parties, we include only those facts necessary for the disposition of this case. The Partnership won a bid to construct the Meadowlands Xanadu Redevelopment Project as part of a state-run plan to redevelop the Continental

[1]On November 22, 2006, the Meadowlands Mills/Mack-Cali Limited Partnership changed its name to the Meadowlands Developer Limited Partnership. For sake of simplicity, we refer to Defendant-Appellee as "Partnership" throughout.

3

Airlines Arena Site ("Arena Site") at the MSC. Because the 104-acre redevelopment site contained 7.69 acres of wetlands, the Partnership applied to the Corps for a fill permit pursuant to § 404 of the CWA. The Corps issued the permit on March 18, 2005, and Plaintiffs filed their complaint on March 30, 2005. Plaintiffs contended that the Corps issued the permit in violation of the CWA, the APA, NEPA, and the Rivers and Harbors Act, and alleged recreational and aesthetic injuries that would result from the loss of the wetlands. In May 2005, Plaintiffs filed a motion for preliminary injunction, which was denied on July 7, 2005. The district court granted summary judgment in favor of the Defendants on all claims on September 28, 2006. Plaintiffs timely appealed.[2]

Construction commenced in March 2005. By January 2006, 6.97 acres of wetlands had been filled, and between August 2007 and October 2007, four more small wetlands were filled, for a total of 7.57 acres filled. Today, two small patches of wetlands remain: a 0.09 acre and 0.03 acre patch, each bordering and on opposite sides of the New Jersey Turnpike.

The question before us is whether the substantial filling of the wetlands – 7.57 out of 7.69 acres – has rendered Plaintiffs' claims moot. There exist two categories of mootness: Article III mootness and prudential mootness. Ali v. Cangemi, 419 F.3d 722, 723 (8th Cir. 2005) (en banc); see also Int'l Bhd. of Boilermakers v. Kelly, 815 F.2d 912,

_____

[2]Plaintiffs do not appeal the grant of summary judgment on their Rivers and Harbors Act claim.

915 (3d Cir. 1987) ("In addition to its threshold constitutional dimension, mootness doctrine incorporates prudential considerations as well."). Our jurisdiction is limited by Article III of the Constitution, which ties our judicial authority to the existence of a "case or controversy." Rendell v. Rumsfeld, 484 F.3d 236, 240 (3d Cir. 2007) (citing Int'l Bhd. of Boilermakers, 815 F.2d at 914). If a case becomes moot in the Article III sense, we do not have jurisdiction. Id. at 241. Under the prudential mootness doctrine, however, we may decline to exercise our discretion to grant declaratory and injunctive relief if the controversy is "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." Chamber of Commerce v. U.S. Dep't of Energy, 627 F.2d 289, 291 (D.C. Cir. 1980) (cited with approval in Int'l Bhd. of Boilermakers, 815 F.2d at 915); see also Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 700 (3d Cir. 1996) (" 'The discretionary power to withhold injunctive and declaratory relief for prudential reasons, even in a case not constitutionally moot, is well established.' ") (quoting S-1 v. Spangler, 832 F.2d 294, 297 (4th Cir. 1987)).

The central question in a prudential mootness analysis is " 'whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.' " Int'l Bhd. of Boilermakers, 815 F.2d at 915 (quoting Jersey Cent. Power & Light Co. v. New Jersey, 772 F.2d 35, 39 (3d Cir. 1985)). Plaintiffs' alleged injuries are harms to their recreational and aesthetic interests that

5

would result from filling the 7.69 acres of wetlands in the Arena site. Because Plaintiffs used the wetlands for "hiking, bird watching, nature study, and wildlife appreciation," they alleged that they would be harmed by any unlawful fill of those wetlands. However, the wetlands Plaintiffs enjoyed at the beginning of this litigation are now gone and cannot be restored. Plaintiffs do not ask that the existing structures be removed, and redressing Plaintiffs' alleged procedural harms under the CWA, NEPA, and the APA would not conceivably restore any wetlands on the Arena site.[3] Because the substantially complete fill forecloses the opportunity for any meaningful relief to Plaintiffs' alleged injuries, we hold that this case is prudentially moot.

We reach this result notwithstanding the fact that 0.12 acres of wetlands remain unfilled. A ruling in Plaintiffs' favor could theoretically protect those wetlands, and thus preserves the Article III requirement for a case or controversy. However, the remaining wetlands are split into two even smaller parcels: a .09 acre parcel and a .03 acre parcel. These wetlands are adjacent to and separated by the New Jersey Turnpike. Preserving small parcels of wetlands, separated and bordered by a major thoroughfare, would not provide any <u>meaningful</u> relief to Plaintiffs' alleged recreational and aesthetic injuries. In the absence of any possibility for meaningful relief, we are free to hold that the case is

---

[3]Additional off-site mitigation would not redress Plaintiffs' injuries either. The fill permit provided for the preservation and enhancement of over 600-acres of wetlands to mitigate the loss of the 7.69 acres to be filled. Plaintiffs did not claim in their complaint that further mitigation was necessary; rather they asked that the 7.69 acres on the Arena site be preserved.

prudentially moot.

Accordingly, we will vacate the opinion and judgment of the district court and remand the case with instructions that the district court dismiss the case as moot.

RENDELL, *Circuit Judge*, concurring.

While I agree that there is no meaningful relief that we can afford plaintiffs based on the development of the parcel at issue, I write separately to note an area of confusion that we would have encountered regarding the scope of analysis under NEPA, had we reached the merits. The regulations at issue require an assessment of the environmental impact of the specific activity for which a permit is required – here, that would mean the filling of the wetlands. 33 C.F.R. Part 325, App. B, 7.b(1) ("The district engineer should establish the scope of the NEPA document (e.g., the EA or EIS) to address the impacts of the specific activity requiring a DA permit . . . ."). However, the examples set forth thereafter speak in terms of the impact of what is constructed on the area in question – here, that would require assessing the impact of the structure to be built and the activities to be conducted. 33 C.F.R. Part 325, App. B, 7.b(3) ("[I]f an applicant seeks a DA permit to fill waters or wetlands on which other construction or work is proposed, the control and responsibility of the Corps, as well as its overall Federal involvement would extend to the portions of the project to be located on the permitted fill.").

The two assessments are vastly different. There are various sections of the regulations that would seem to favor each interpretation. Several courts have had to

7

grapple with the language of the regulation, and most have relied on the example to support the more comprehensive assessment that the appellants urge but was not performed here. *See Ohio Valley Env. Coalition v. U.S. Army Corps of Eng'rs*, 479 F. Supp. 2d 607, 655 (S.D. W. Va. 2007) ("if that part of the project which is located on the fill may be excluded, these regulations are rendered meaningless. The Corps would never have to consider more than the filled portion of the stream. This result would be contrary to the clear statement in the second paragraph of § 7(b)(3) . . . ."); *Stewart v. Potts*, 996 F. Supp. 668, 682 (S.D. Tex. 1998) (concluding that the Corps acted irrationally by excluding the forest located on the wetlands from its NEPA review). A clarification of the regulation itself would be helpful to the courts, and, presumably, the agency.

I also write to note that, although we conclude that the case is moot, this conclusion is dictated by the specific circumstances presented here. In the present case, the Partnership has already engaged in mitigation of over-600 acres of wetlands and filled all but .12 acres of contaminated and dispersed wetlands. Edifices have been constructed on top of almost all of the fill, rendering remediation of the filled wetlands impossible. At this point in the process, there simply is no possible remedy for appellants.

This situation is not of plaintiffs' creation, for they moved swiftly. However, the

developer moved with lightning speed to accomplish the fill.[4]  We need to recognize the danger inherent in this fact pattern where, following the issuance of an Army Corps of Engineers permit, the developer will rush to fill the wetlands and commence construction, disrupting the wetlands, mooting the controversy, and rendering any judicial relief impractical if not impossible.  In meritorious cases, this haste to fill the wetlands nullifies the very essence of the statutes and regulations designed to protect our environment.

Litigants and districts courts alike should be mindful of this risk.  Where there is potential for harm, a temporary restraining order or a stay pending a decision on a motion for a preliminary injunction may be appropriate.  Ideally, the regulations or implementing statute would be amended to provide for some limited period of time between issuance of the permit and the start of construction in order to facilitate judicial review and preserve meaningful remedies, in the interest of all concerned.

---

[4] The Corps issued a permit on March 18, 2005; Sierra Club filed its compliant on March 30th and moved for a preliminary injunction on May 5th.  By May 25th, 5.44 acres of wetlands had been filled.  The District Court denied the preliminary injunction on July 7, 2005.