NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-1889

_____

In re:  BUFFETS HOLDINGS, INC., et al.,
                                                          Debtors


DELMARVA POWER & LIGHT COMPANY;
ATLANTIC CITY ELECTRIC COMPANY;
POTOMAC ELECTRIC POWER COMPANY;
FLORIDA POWER AND LIGHT COMPANY;
SACRAMENTO MUNICIPAL UTILITY DISTRICT,
                                                          Appellants

_____

On Appeal from the United States District Court
for the District of Delaware
D.C. Civil Action Nos. 1-08-cv-00187 & 1-08-cv-00188
District Judge: Honorable Sue L. Robinson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 20, 2010

Before:  SCIRICA and AMBRO, *Circuit Judges*, and JONES[*], *District Judge*.

(Filed: September 8, 2010)

_____

OPINION OF THE COURT

_____


_____

[*]The Honorable John E. Jones, III, United States District Judge for the Middle District
of Pennsylvania, sitting by designation.

SCIRICA, *Circuit Judge*.

This is an appeal from the District Court's dismissal as moot of the appeal of the Bankruptcy Court's order. Because this appeal presents no actual case or controversy, we will dismiss it as moot.

# I.

On January 22, 2008, Buffets Holdings, Inc. and its affiliates (the "Debtors"), the operators of numerous buffet-style restaurants, filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. On the same date, the Debtors filed a Utility Motion under § 366 of the Bankruptcy Code,[1] seeking an order (1)

---

[1] 11 U.S.C. § 366 provides:

(a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

(c)(1)(A) For purposes of this subsection, the term "assurance of payment" means–
          (i) a cash deposit;
          (ii) a letter of credit;
          (iii) a certificate of deposit;
          (iv) a surety bond;
          (v) a prepayment of utility consumption; or

(continued...)

prohibiting the Debtors' utility providers from altering, refusing, or discontinuing utility services on account of pre-petition invoices; (2) determining that the Debtors' utility providers were adequately assured of post-petition payment for utility services based on the Debtors' establishment of a segregated escrow account containing an amount equal to 50% of the Debtors' estimated monthly cost of utility service (the "Utility Deposit Account"); and (3) establishing the procedures for determining additional adequate

---

[1](...continued)

        (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee.

    (B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.

(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

    (B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider--
        (i) the absence of security before the date of the filing of the petition;
        (ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
        (iii) the availability of an administrative expense priority.

(4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

3

assurance of future payment to the Debtors' utility service providers. Under the proposed procedures, any unsatisfied utility provider would need to serve the Debtors with a request for additional assurance of payment. The Debtors, at their discretion, could agree to additional assurance, or could file a motion with the court within 30 days of receiving a request, seeking a determination that the assurance provided was adequate. The Bankruptcy Court entered an order that approved the Utility Motion on an interim basis (the "Interim Utility Order"), and scheduled a final hearing on the Utility Motion.

Subsequently, several of the utility companies (the "Utilities") filed an objection to approval of the Utility Motion.[2] They contended the proposed escrow account was not a form of assurance permitted under § 366, and requested the Bankruptcy Court to order the Debtors to provide them with a deposit equal to two months of utility service. They also asserted the proposed procedures for requesting additional assurance were inconsistent with § 366. Finally, they argued the Utilities Motion improperly sought injunctive relief without the benefit of proper service or the commencement of an adversary proceeding.

At the final hearing, the Bankruptcy Court approved the relief requested in the Utility Motion subject to the oral rulings made on the record. Two weeks later, the court entered the final order granting the Utility Motion ("Final Utility Order"). Consistent

---

[2]The Debors had over 4,400 utility accounts with numerous utility companies nationwide. The objection at issue was made by Delmarva Power & Light Company, Atlantic City Electric Company, Potomac Electric Power Company, Florida Power & Light Company, Sacramento Municipal Utility District, and Gexa Energy. Gexa Energy withdrew from participating in the appeal to the District Court, and is not an appellant in this case.

with the Interim Utility Order, the Final Utility Order approved the Utility Deposit Account as security for the utility companies, and outlined similar procedures for requesting additional assurance.

On March 10, 2008, the Utilities filed their Notice of Appeal to the District Court. On September 3, 2008, after the Utilities filed their opening brief in the District Court, the Debtors mailed checks to each of the Utilities in the amounts of adequate assurance previously determined by the Bankruptcy Court. But the Utilities refused the payments. The Debtors moved to dismiss the appeal on the ground that the Utilities' challenge had been mooted by the voluntary payments made by the Debtors. The Utilities opposed the motion. After hearing oral argument on the Debtors' Motion, together with the argument on the merits of the appeal, the District Court granted the Motion and dismissed the appeal as moot.

The Utilities timely filed the instant appeal.

## II.

"[I]t is axiomatic that this court has a special obligation to satisfy itself of its own jurisdiction." *United States v. Touby*, 909 F.2d 759, 763 (3d Cir. 1990) (internal quotation marks omitted); *see also Rendell v. Rumsfeld*, 484 F.3d 236, 240 ("We have an independent obligation at the threshold to examine whether we have appellate jurisdiction." (internal citations omitted)) . The exercise of judicial power under Article III of the Constitution "depends upon the existence of a case or controversy." *In re Surrick*, 338 F.3d 224, 229 (3d Cir. 2003) (internal quotation marks omitted). "This case-

5

or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The parties must continue to have a personal stake in the outcome of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation marks omitted). "The existence of a case or controversy, in turn, requires (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution." *Rendell*, 484 F.3d at 240 (internal quotation marks omitted). In other words, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7. "A case will be considered moot, and therefore nonjusticiable as involving no case or controversy, if the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Surrick*, 338 F.3d at 229 (3d Cir. 2003) (internal quotation marks omitted). "Accordingly, the central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Id.* at 230 (internal quotation marks omitted).

Here, we cannot provide any effectual relief with respect to this appeal. The underlying controversy in this case concerns the Bankruptcy Court's Interim and Final Utility Orders granting the Debtors' Utility Motion. *See* Appellant's Br. 2–4 (stating the issues presented). But after this appeal was filed, the Bankruptcy Court entered the

6

Confirmation Order approving the Debtors' Reorganization Plan.[3] Pursuant to Article IX of the Plan, "[a]ll injunctions or stays . . . , in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date." Debtors' Third Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code at 44, *In re Buffets Holdings, Inc.*, No. 08-10141 (Bankr. D. Del. Mar. 11, 2009). The Plan became effective on April 28, 2009. Therefore, the Bankruptcy Court's orders pertaining to Debtors' Utility Motion are no longer in effect, and any decision we issue regarding those orders would be purely an advisory opinion.

Furthermore, the essence of the Utilities' objections had been that Debtors did not provide the Utilities with the adequate assurance of payment, as required by § 366, when

---

[3]On May 19, 2009, following the Bankruptcy Court's March 26, 2009 Confirmation Order approving the Debtor's Bankruptcy Plan, the Debtors filed a Motion To (I) Expand The Record On Appeal; (II) Dismiss The Instant Appeal As Moot; (III) In The Alternative, Strike Issues Three Through Ten In Appellants' Statement Of Issues On Appeal; And (IV) Suspend Briefing Until A Ruling On The Motion. We ordered the Motion to be referred to the merits panel and instructed the parties to brief the issues raised. The essence of the Motion is to expand the record to include the Confirmation Plan. "[F]acts bearing on the issue of mootness can be raised at any time during the judicial proceedings." *In re Cantwell*, 639 F.2d 1050, 1053 n.4 (3d Cir. 1981); *see also Accumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 226 n.25 (3d Cir. 2009); *Clark v. K-Mart Corp.*, 979 F.2d 965, 967 (3d Cir. 1992). Furthermore, we can consider facts and issues pertinent to the motions filed. *See* Fed. R. App. P. 27. Therefore, we will consider the Confirmation Plan, Debtors' Third Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code, *In re Buffets Holdings, Inc.*, No. 08-10141 (Bankr. D. Del. Mar. 11, 2009), and the order confirming it, Findings Of Fact, Conclusions Of Law, And Order Under Section 1129 Of The Bankruptcy Code And Rule 3020 Of The Bankruptcy Rules Confirming Debtors' Third Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code*, In re Buffets Holdings, Inc.*, No. 08-10141 (Bankr. D. Del. Apr. 17, 2009), for the purpose of our jurisdiction inquiry.

the funds were deposited in a segregated escrow account under the Debtors' control.  But as soon as the Debtors tendered checks to the Utilities, this controversy necessarily became moot because the Utilities received the relief they were seeking.  Therefore, the District Court was correct in dismissing the Utilities' appeal from the Bankruptcy Court's orders on the Debtors' Utility Motion as moot even before the Bankruptcy Plan was confirmed.[4]

### III.

The Utilities argue that even if the case is moot, we should still reach its merits because the issues presented are "capable of repetition, yet evading review."  Appellant's Br. 39.  Under the capable-of-repetition exception, "a court may consider the merits of a case that would otherwise be deemed moot when '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'"  *Rendell*, 484 F.3d at 241 (quoting *Spencer*, 523 U.S. at 17).  "The exception from the mootness doctrine for cases that are technically moot but 'capable of repetition,

---

[4]The Utilities assert we can provide them "'effective relief' by issuing a definitive ruling on all of the issues on appeal raised by the Utility Order, Appellant's Br. 36, and "by setting forth the correct legal standards under [§] 366," *id.* at 37.  In other words, the Utilities ask us to render an advisory opinion.  *See id.* at 35 ("Appellants are entitled to have a declaration of their procedural and substantive rights under [§] 366.").  That we cannot do.  *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("'[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them.'" (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975))).

yet evading review' is narrow and available 'only in exceptional situations.'" *Id.* (quoting

*City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), and *Weinstein v. Bradford*, 423

U.S. 147, 148–149 (1975)).

The issue presented here, even if capable of repetition, does not evade review.  To

evade review, the challenged action must be "by its very nature short in duration, so that

it could not, or probably would not, be able to be adjudicated while fully alive."  *Finberg*

*v. Sullivan*, 634 F.2d 50, 55 (3d Cir. 1980) (quoting *Dow Chem. Co. v. EPA*, 605 F.2d

673, 678 n.12 (3d Cir. 1979) (internal quotation marks omitted)).

The bankruptcy proceedings are not in their nature so short as to cause bankruptcy

courts' orders to evade review.  Although here the controversy has been mooted by the

Bankruptcy Court's confirmation of the Bankruptcy Plan, generally a creditor has the

ability to seek a stay and an expedited appeal.  Therefore, it is not inevitable that an

appeal of an order under § 366 would lapse into mootness prior to review.

**IV.**

For the reasons set forth above, we will dismiss this appeal as moot.

9