**BLD-144**                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1078
_____

DAVID STEVENSON;
MICHAEL MANLEY;
MICHAEL L. JONES,
                              Appellants

v.

WARDEN THOMAS CARROLL
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 04-cv-00139)
District Judge:  Honorable Gregory M. Sleet
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
March 22, 2012

Before:  SCIRICA, SMITH AND CHAGARES, Circuit Judges

(Opinion filed: April 6, 2012 )
_____

OPINION
_____

PER CURIAM

        David Stevenson, Michael Manley, and Michael L. Jones (collectively

"plaintiffs"), all pro se inmates, appeal from the order of the District Court granting

summary judgment to defendant Warden Thomas Carroll. We will summarily affirm. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

I.

Plaintiffs filed a lawsuit pursuant to 42 U.S.C. § 1983 in March 2004. At that time, they were detainees at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, and were then housed in the Security Housing Unit ("SHU"). They asserted that their placement in the SHU violated their substantive and procedural due process rights, and they sought return to the general prison population, monetary damages, and the establishment of a system of review for transfers of pretrial detainees into the SHU. The District Court dismissed the case pursuant to a Rule 12(b)(6) motion, and we reversed on appeal. Stevenson v. Carroll, 495 F.3d 62, 64-65 (3d Cir. 2007).

> The following is taken from our precedential opinion:
>
> At the time of their complaint, Stevenson and Manley were awaiting resentencing. Both had been convicted and sentenced to death in January 1997, but their sentences were vacated and remanded on or about May 30, 2001. At that time, they were moved off death row, and into the Security Housing Unit ("SHU"). Stevenson was moved from the SHU to a less restrictive pre-trial facility in December 2003, but was returned to the SHU in January 2004. Neither one of them received a hearing or explanation for their transfers into the SHU. They were both subsequently re-sentenced to death on February 3, 2006.
>
> Jones was awaiting trial at the time of the complaint. Following a disruption at Gander Hill Prison in Wilmington, Delaware, he and several other inmates were moved to the SHU on or about February 19, 2003. Jones asserts that, like Stevenson and Manley, he was not afforded an explanation or hearing regarding his transfer into more restrictive housing. He does, however, state that he was alleged to have been involved in the riot at Gander Hill. Jones was subsequently found guilty of first-degree murder and sentenced to life imprisonment on September 16, 2005.

Stevenson, 495 F.3d at 64-65.

Following remand, Carroll moved for summary judgment. By then, Stevenson and Manley had been moved to death row, and Jones was in the area of the SHU reserved for sentenced inmates.

After discovery, the District Court expanded on the facts. In June 2001, Stevenson's lawyer wrote to then-Warden Snyder inquiring about the reason for his placement in the SHU. In January 2002, Stevenson was informed that his move was based on his pending penalty phase retrial and on disorderly threatening behavior and inmate demonstration. His placement was reviewed in January 2003; later that month, the Institutional Base Classification Committee ("IBCC") approved the recommendation to house him in the SHU pending resentencing based on his risk assessment score and his open first-degree murder charge. Stevenson received notice of the decision; he also received two written responses from his counselor in 2003 regarding his placement.[1]

Like Stevenson, Manley was notified in January 2002 that his move to the SHU following the reversal of his death sentence was based on his pending penalty phase retrial. His placement was reviewed in January 2003; the IBCC approved the recommendation to house him in the SHU pending resentencing based on his risk assessment score and his open first-degree murder charge. Manley received notice of the decision; he also received written responses from two different counselors in 2003 regarding his placement.[2]

_____

[1] Stevenson received several disciplinary reports between 2001 and 2004.
[2] Manley received several disciplinary reports between 2002 and 2004.)

Carroll wrote a memorandum to the Chief of the Delaware Bureau of Prisons ("BOP") in June 2003 regarding Stevenson's and Manley's complaints. In it, Carroll noted that both inmates were awaiting resentencing after having death sentences overturned, both were held without bail, and both were viewed as security risks in the general population.

While awaiting trial at a different institution, Jones was involved in an incident with other inmates in which they tried to harm a fellow inmate. As a result, the BOP transferred Jones to the SHU pretrial unit at VCC. Jones wrote letters to a counselor, the Deputy Warden, Carroll, the DOC Commissioner, and the Governor of Delaware complaining about his transfer and stating that he had not received notice of charges and had not been given an opportunity to respond. Jones received a number of disciplinary reports between 2002 and 2005. In 2005, he was convicted of three counts of first-degree murder and sentenced to three life sentences without the possibility of parole.

According to Carroll and other prison officials, the main reason for Stevenson's and Manley's placement in the SHU was the fact that they were facing possible death sentences. The prison also considered the fact that they had murdered a state's witness, and believed that the crime foreshadowed future similar conduct. The prison determined that they presented a significant risk if housed in the general population. Jones was placed in the SHU because of his serious pending charges (three counts of first degree murder) and because of his significant disciplinary record.

The District Court considered Stevenson's and Jones' responses[3] before granting the summary judgment motion. The court first found that plaintiffs had not exhausted their administrative remedies, and that Carroll was entitled to protection from official-capacity claims for money damages under the Eleventh Amendment. The District Court also found for Carroll on the merits of both the substantive and procedural due process claims. Finally, the court also held that even if the plaintiffs' claims should have survived summary judgment on the merits, Carroll was entitled to qualified immunity.[4] Plaintiffs filed a timely appeal.

## II.

We have jurisdiction under 28 U.S.C. § 1291. In reviewing a District Court's grant of summary judgment, we apply the same test the District Court applied. Saldana v. Kmart Corp., 260 F.3d 228, 231 (3d Cir. 2001). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Id. at 232; Fed. R. Civ. P. 56(a). The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a

---

[3] Manley did not file a response.

[4] Because we have concluded that plaintiffs' claims are either moot or barred by the Eleventh Amendment or qualified immunity, we need not address the exhaustion issue or the merits of the due process claim.

genuine issue for trial." Saldana, 260 F.3d at 232 (quoting Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)).

III.

A.  Money Damages

We agree with the District Court that plaintiffs' claims against Carroll in his official capacity are prohibited by the Eleventh Amendment. Barring consent, a state or one of its agencies is immune from suit in federal court under the Eleventh Amendment. See Kimmel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000). Additionally, the Eleventh Amendment bars a suit for monetary damages against state officials sued in their official capacities. See Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990).

We also agree with the District Court that qualified immunity shields Carroll in his individual capacity from monetary damages. Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The inquiry, then, includes two parts:  (1) whether the plaintiff demonstrated the deprivation of a constitutional right, and (2) whether the right was established at the time of the alleged deprivation. See Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011). Circumstances in a particular case determine which part of the test is applied first. See Pearson v. Callahan, 555 U.S. 223, 236-37 (2009). The District Court held in the alternative that even if the plaintiffs met the first prong of the test, the constitutional rights at issue were not clearly established. We will follow that approach here.

6

Prior to our ruling in Stevenson, there existed no precedent speaking to the issue of housing detainees facing capital sentencing in the SHU. We noted that a sentenced inmate could "conceivably be held in administrative custody merely because his prior crimes reasonably foreshadow future misconduct." Stevenson, 495 F.3d at 70, 71 (quoting Shoats v. Horn, 213 F.3d 140, 146 (3d Cir. 2000)). We concluded that pretrial administrative detention in the SHU required only an "informal nonadversary review" that "need not be extensive," so long as a detainee received an explanation for his transfer to the SHU and an opportunity to respond. Stevenson, 495 F.3d at 70, 71. As noted above, plaintiffs received both notice and an opportunity to respond, though not a formal hearing. We agree with the District Court that it was reasonable for Carroll to believe that that was all that was required, given Shoats, and considering the finite length of time plaintiffs were housed in the SHU and the prison's security concerns.

B. Other Relief

"The requirement that a case or controversy be actual and ongoing extends throughout all stages of federal judicial proceedings, including appellate review." Rendell v. Rumsfeld, 484 F.3d 236, 240-41 (3d Cir. 2007) (internal quotation omitted). Given that the plaintiffs are no longer pretrial detainees, the District Court properly determined that their request for injunctive relief—in the form of a transfer from the SHU—was moot.

Additionally, plaintiffs' request for the establishment of a system of review for transfers of pretrial detainees into the SHU is also moot. Plaintiffs' requests do not fall into the "capable of repetition, yet evading review" exception to the mootness doctrine.

7

Under that doctrine, a court could exercise its jurisdiction and consider the merits of an otherwise moot case if "(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Id. at 241. Even assuming, arguendo, that plaintiffs' challenge to their pretrial SHU placement could not be fully litigated prior to their sentencing, there is no indication anywhere in the record that any of the plaintiffs are currently challenging their sentences, such that they are reasonably likely to find themselves again awaiting resentencing.

IV.

Because the appeal does not present a substantial question, we will summarily affirm the District Court's order. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.