NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2090
_____

FABIAN BANTON,
INDIVIDUALLY

v.

JOHN MORTON, DIRECTOR;
US IMMIGRATION AND CUSTOMS ENFORCEMENT;
THOMAS DECKER, IMMIGRATION AND CUSTOMS ENFORCEMENT
FIELD OFFICE DIRECTOR, PHILADELPHIA DISTRICT;
KENT FREDERICK, CHIEF COUNSEL;
OFFICE OF CHIEF COUNSEL, PHILADELPHIA DISTRICT;
THOMAS G. SNOW, ACTING DIRECTOR;
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

Fabian Banton,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:10-cv-05600)
District Judge:  Honorable John R. Padova

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 23, 2012
_____

Before:  RENDELL, FISHER, and CHAGARES, Circuit Judges.


(Filed: April 30, 2012)

_____

OPINION
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

This is one of several appeals filed in this Court by Fabian Banton, a citizen of

Jamaica who was erroneously removed from the United States on March 7, 2005.

Banton's current appeal challenges the denial of his petition for a writ of mandamus,

through which he sought to compel the Government to send him back to the United

States or, in the alternative, to pay for the cost of his return trip. Because Banton has

since returned to the United States and the other relief he seeks does not justify the

issuance of a writ of mandamus, we will dismiss this appeal in part and affirm the District

Court's judgment in part.

I.

Insofar as we write exclusively for the parties, we provide only an abbreviated

summary of the facts essential to our disposition. Banton entered the United States in

1978 as an agricultural worker and was convicted of drug and firearms charges in 1991

and 1993, respectively. Based on these convictions, the United States Immigration and

Customs Enforcement ("ICE") began removal proceedings in 1995. On October 11,

1996, Banton failed to appear for a hearing and an Immigration Judge ("IJ") entered an in

absentia order of removal against him. Banton later filed a motion to reopen his removal

proceedings, which an IJ denied. In March 2005, while Banton's appeal of the IJ's denial

of his motion to reopen was pending before the Board of Immigration Appeals ("BIA"),

Banton was removed. In light of Banton's absence from the United States, the BIA dismissed his appeal on July 22, 2005.

Banton appealed and we found that the BIA had violated the automatic-stay provisions of 8 C.F.R. §§ 1003.23(b)(4)(iii)(C), 1003.6, by removing Banton during the pendency of his appeal. We remanded the case so that the BIA could consider the merits of Banton's motion to reopen. Appendix ("App.") 14. After the BIA upheld the denial of Banton's motion to reopen on the merits and Banton filed a second appeal, we remanded this matter on the basis that the BIA had not properly considered whether the IJ's 1996 order of removal was supported by clear and convincing evidence. App. 13. We instructed the BIA to consider this issue and stated that "[t]he BIA may . . . remand the matter to an [IJ] if it concludes that a hearing is appropriate." Id. We also denied Banton's motion to compel his return to the United States, but noted "the Acting Attorney General's representation that the Department of Homeland Security will permit [Banton]'s return to the United States to attend any hearing before an [IJ]." Id.

The BIA elected to remand the case to an IJ, who scheduled a hearing despite Banton's absence from the country. When Banton did not appear, the IJ continued the hearing to November 2, 2010. When Banton requested a second continuance, the IJ agreed but ordered Banton to pay the cost of his transport to the United States.

On October 22, 2010, Banton filed a complaint seeking a writ of mandamus to compel his return to the United States at the Government's expense so that he could participate in his immigration hearing. The District Court dismissed the case on February 22, 2011, finding that mandamus was not warranted because the Government did not

3

have a clear duty to return Banton to the United States. Banton then filed the instant appeal.

While this appeal was pending, on November 3, 2011, Banton was able to return to the United States at his own expense. He is currently being held in Pike County, Pennsylvania.

## II.

At our request, the parties filed letter briefs to clarify the issue of what relief Banton may obtain in light of his recent return to this country. In his letter brief, Banton stated that he sought the "grant of this appeal and a determination that he was entitled to prevail" in the District Court proceedings. Banton further requested reimbursement for the cost of his travel to the United States and his release from custody on the basis that the Government wrongly classified him as a parolee. We will address each claim in turn.

## A.

We first must consider whether we have appellate jurisdiction over this matter given the change in circumstances since Banton filed his complaint. See Lorillard Tobacco Co. v. Bisan Food Corp., 377 F.3d 313, 318 (3d Cir. 2004) ("We have an independent obligation at the threshold to examine whether we have appellate jurisdiction."). In particular, we must inquire as to whether this case presents a justiciable case or controversy so that we have Article III jurisdiction, or whether changed circumstances have rendered this case moot.[1] "[T]he central question of all

_____

[1] Our review of whether a claim has been rendered moot is plenary. Int'l Bhd. of Boilermakers v. Kelly, 815 F.3d 912, 914 (3d Cir. 1987).

4

mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." Jersey Cent. Power & Light Co. v. New Jersey, 772 F.2d 35, 39 (3d Cir. 1985). It does not matter when a case becomes moot, because the "requirement that a case or controversy be actual and ongoing extends throughout all stages of federal judicial proceedings, including appellate review." Rendell v. Rumsfeld, 484 F.3d 236, 240-41 (3d Cir. 2007) (alterations and quotation marks omitted). Thus, "if a case becomes moot after the District Court enters judgment, an appellate court no longer has jurisdiction to review the matter on appeal." Id. at 241.

Banton's return to the United States has plainly rendered his mandamus petition moot insofar as he asks us to order the Government to allow him to return to the United States. Determining whether Banton was entitled to succeed in the District Court would require us to render an advisory opinion in violation of the limited jurisdiction granted to federal courts by Article III of the Constitution. Thus, we will dismiss this claim for lack of jurisdiction.

B.

We next consider Banton's claim that the District Court erred by failing to compel the Government to pay for the cost of his return trip to the United States.[2]

---

[2] We review the District Court's denial of a writ of mandamus for an abuse of discretion, but our review of whether the requirements for mandamus have been satisfied as a matter of law is plenary. Arnold v. Blast Intermediate Unit 17, 843 F.2d 122, 125 (3d Cir. 1988).

5

District courts have jurisdiction in "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is a "drastic" remedy that we have "reserved for really extraordinary cases" in which relief is unavailable through other means. Ex parte Fahey, 322 U.S. 258, 259-60 (1947). "A petitioner seeking the issuance of a writ of mandamus must have no other adequate means to obtain the desired relief, and must show that the right to issuance is clear and indisputable." Madden v. Myers, 102 F.3d 74, 79 (3d Cir. 1996). To have a "clear and indisputable" right to the issuance of the writ, the petitioner must show that he is owed "a legal duty which is a specific, plain ministerial act devoid of the exercise of judgment or discretion." Richardson v. United States, 465 F.2d 844, 849 (3d Cir. 1972) (en banc) (quotation marks omitted), *rev'd on other grounds*, 418 U.S. 166 (1974). "An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt." Id.

Banton asserts that the District Court erred by failing to compel the Government to reimburse his travel costs for his return to the United States. As the District Court explained in its well-reasoned opinion, no section of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, et seq., requires the Government to pay for a deportee's return trip to this country to challenge his removal. Moreover, Banton's physical presence was not required for his hearing to proceed because the current version of the INA allows the hearing to take place through video conference or, with the consent of the alien, through a

6

telephone conference.  Id. § 1229a(b)(2)(A).[3]  Because Banton failed to show that the Government had a clear, nondiscretionary duty to cover the cost of his transportation, the District Court properly dismissed this claim.

## C.

Finally, Banton seeks a writ of mandamus to compel the Government to release him from custody during the pendency of his immigration proceedings.[4]  Banton cites no law in support of this argument, but instead simply states that "as an alien in deportation proceedings, [he] is not subject to mandatory detention."  Banton Br. 61.  Because Banton is an "arriving alien" who has been "paroled" into the United States,  his detention is mandatory under the INA.  8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  Thus, this contention is also meritless.

## III.

For the foregoing reasons, we will dismiss the appeal in part and affirm the judgment of the District Court in part.

---

[3]  In support of his contention that his presence was required at his hearing, Banton argues that the INA provides that an "alien shall have reasonable opportunity to be present" at his hearing.  This language, however, comes from a an older version of section 242(b) of the INA which has since been modified to allow for video and telephone conferencing in lieu of an in-person hearing.

[4] Because his detention occurred after the District Court's dismissal of this case, Banton did not make this argument to the District Court.